UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
---------------------------------------------------------

|  |  |  |
|---|---|---|
| GERALD THOMPSON, | : | CASE NO. 1:13-CV-550. |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | OPINION & ORDER |
|  | : | [Resolving Doc. 29] |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

---------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this medical malpractice case, Plaintiff Gerald Thompson says doctors employed by the United States Department of Veterans Affairs failed to properly treat his right leg, which eventually required amputation.[1] Defendant United States moved for summary judgment.[2] Plaintiff Thompson failed to respond.[3]  For the reasons that follow, the Court **GRANTS** Defendant's motion for summary judgment.

## I. Background

In 1995, Plaintiff Gerald Thompson was diagnosed with Type II diabetes.[4] Since his diagnosis, Thompson's diabetes has been uncontrolled.[5]  In addition to diabetes, Thompson has numerous other medical problems, including high blood pressure, hepatitis C, cerebrovascular

---

[1] Doc. 1.
[2] Doc. 29.
[3] Doc. 33.
[4] Doc. 29-2 at 2.
[5] *See generally id.*

Case No. 1:13-cv-550
Gwin, J.

disease, alcohol addiction, nicotine dependence, and drug abuse.[6]

In 2007, Thompson went to the Cleveland VA Medical Center ("VA") complaining about pain when he walked along distances.[7]  He had surgery on his left leg, which relieved his symptoms.[8]

Around 2009, Thompson began experiencing pain in his right leg.[9]  In February 2010, he was seen in the vascular surgery department at the VA, and doctors discovered he had poor circulation in his right leg. To improve blood flow, doctors performed a common femoral artery endarterectomy.[10]

In early August 2010, Thompson returned to vascular surgery because of tissue loss to his right ankle resulting in an ulcer.[11]

On August 20, 2010, in order to salvage his foot, vascular surgeons performed a bypass surgery to increase blood flow to his lower extremities.[12]  Doctors explained to Thompson the signs and symptoms of infection and told him to go to the emergency room if signs of infection developed.[13]

Thompson was referred to the podiatry department for the care of his ulcer.[14]  Thompson regularly had checkups every few weeks to monitor the ulcer and check for signs of infection.[15]

---

[6]*Id.* at 46.

[7]*Id.* at 5-6.

[8]*Id.* at 7.

[9]*Id.* at 46.

[10]*Id.* at 50. A femoral artery endarterectomy is a surgical procedure to remove plaque from the lining of the artery.

[11]*Id.* at 54.

[12]*Id.* at 66.

[13]*Id.* at 9, 15.

[14]*Id.* at 54.

[15]*Id.* at 21.

Case No. 1:13-cv-550
Gwin, J.

On December 3, 2010, Thompson noticed the ulcer turned from pink to black.[16]  Despite having been previously instructed to go to the emergency room if he developed signs of infection, Thompson decided to wait until his next podiatry appointment.[17]

On December 6, 2013, when Thompson went to the vascular surgery clinic, doctors discovered the ulcer was infected.  It was entirely blackened, very foul smelling, and had exposed bone.[18]  Doctors determined that Thompson's foot was unsalvageable and required amputation.[19]

On March 14, 2013, Thompson filed a Complaint saying that the VA was negligent by failing to "properly diagnose, t[]reat, refer, supervise and/or monitor Plaintiff Gerald Thompson's symptoms, complaints and medical conditions, and by otherwise providing substandard care."[20]

On December 19, 2013, Defendant United States moved for summary judgment,[21] to which Plaintiff Thompson did not respond.[22]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23]  The moving party must demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[24]

---

[16]*Id.* at 42.

[17]*Id.* at 139.

[18]*Id.*

[19]*Id.* at 139-146.

[20]Doc. 1 at 2.

[21]Doc. 29.

[22]Doc. 33.

[23]*Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

[24]*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Case No. 1:13-cv-550
Gwin, J.

Once the moving party has done so, the non-moving party must produce admissible

evidence—not allegations or denials in pleadings—showing a triable issue.[25] A court cannot grant

summary judgment in favor of the moving party simply because the non-moving party has not

responded.[26] The court must, at a minimum, examine the moving party's motion for summary

judgment to ensure that he has met the initial burden imposed by Rule 56(c).[27]

### III. Analysis

Plaintiff Thompson brings this suit pursuant to the Federal Torts Claims Act ("FTCA").

Under the FTCA, a plaintiff may sue the United States for damages caused by its employees acting

within the scope of their employment.[28] Courts refer to the law of the state where the alleged act or

omission occurred to determine FTCA liability.[29] Here, Thompson says that the purported

malpractice occurred in Ohio.[30]

To make out a medical malpractice claim under Ohio law, a plaintiff must show: (1) the

applicable standard of medical care; (2) defendant's negligent failure to meet that standard; and (3)

that the defendant's negligence proximately caused the plaintiff's injury.[31] Ohio law also requires

the plaintiff to show *expert testimony* to establish a breach of the standard of care and to show

proximate causation.[32] The Sixth Circuit has applied the expert testimony rule to actions brought

---

[25]*See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[26]*Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005).

[27]*Id.*

[28]28 U.S.C. § 2674.  *See also Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004).

[29]28 U.S.C. 1346(b).  *See also Rayonier Inc. v. United States*, 352 U.S. 315, 318-319 (1957); *Flechsig v. United States*, 991 F.2d 300, 303-304 (6th Cir. 1993).

[30]Doc. 1 at 2.

[31]*Bruni v. Tatsumi*, 346 N.E.2d 673, 677 (Ohio 1976).

[32]*Id.* at 677-68.

-4-

Case No. 1:13-cv-550
Gwin, J.

under the FTCA.[33]

Here, Thompson has failed to show expert evidence that would establish the recognized standard of care in the medical community.  Thompson has also failed to give expert evidence that establishes what injury resulted from the VA doctors' care.  The Court set December 2, 2013, as the deadline for Thompson to identify his expert witnesses.[34]  He failed to comply.  He also failed to oppose the Government's motion for summary judgment.  Because Thompson has failed to meet Ohio's expert testimony requirement, he has not met his burden of showing a triable issue.

### IV. Conclusion

For the reasons above, the Court **GRANTS** Defendant's motion for summary judgment.

IT IS SO ORDERED

Dated: February 7, 2014                              s/          *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE

---

[33]*Lyons v. Brandly*, 430 F. App'x 377, 381 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1721 (2012).
[34]Doc. 25.

-5-